**Not for Publication**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **GABRIEL HENDERSON,** : <br> : <br> Petitioner, : <br> : <br> v. : <br> : <br> **UNITED STATES OF AMERICA,** : <br> : <br> Respondent. : | Civil Action No. 17-1104 (ES) <br><br><br> OPINION |

**SALAS, DISTRICT JUDGE**

Petitioner Gabriel Henderson ("Petitioner"), a prisoner currently confined at FCI Ray Brook, moves to vacate, correct, or set aside his federal sentence pursuant to 28 U.S.C. § 2255. (D.E. No. 1). Respondent United States of America ("Respondent") opposes the motion. (D.E. No. 6). For the reasons explained in this Opinion, the Court denies the motion and denies a certificate of appealability.

**I.     FACTUAL BACKGROUND & PROCEDURAL HISTORY**

Petitioner was charged with conspiracy to distribute, and to possess with intent to distribute, 100 grams or more of a mixture and substance containing a detectable amount of heroin, contrary to 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), and in violation of 21 U.S.C. § 846. (*United States v. Henderson*, 2:15-cr-0329, D.E. Nos. 48–49). On June 30, 2015 and pursuant to his plea agreement, Petitioner pled guilty before this Court to a one-count conspiracy to distribute heroin. (*See id.*). At Petitioner's guilty plea hearing, the Court inquired about Petitioner's awareness of some of the salient terms of the plea agreement. One of such inquiries was Petitioner's

understanding that the plea agreement included an appeal and collateral attack waiver, which Petitioner indicated that he understood. (D.E. No. 6-1, Attachment C ("Plea Hr'g Tr.") at 24:20–26:12).

Petitioner's Presentence Investigation Report ("PSR") calculated a total offense level of 31, a criminal history score of 17, and a criminal history category of VI. (PSR §§ 105, 118 & 119). Petitioner, whose criminal history included multiple drug offenses and an aggravated manslaughter conviction, was designated a career offender pursuant to Section 4B1.1 of the United States Sentencing Guidelines ("USSG"). (PSR §§ 111 & 119). Petitioner's total offense level and criminal history category resulted in a guideline imprisonment range of 188 to 235 months. (PSR § 161). At Petitioner's sentencing hearing, Petitioner's counsel made several arguments for why the Court should vary downwards from the guidelines sentence range, including the relatively minor amount of drugs involved in the offense, as well as Petitioner's prompt acceptance of responsibility. (D.E. No. 6-1, Attachment D ("Sent. Hr'g Tr.") at 29:6–37:5). The Court accepted the PSR's classification of Petitioner as a career offender and adopted the guideline calculations, but granted an eight-month downward variance resulting in a sentence of 180-months imprisonment, followed by a five-year supervised release. (*Id.* at 55:14–22). Petitioner did not appeal his conviction. (D.E. No. 1 at 2).

Petitioner filed the instant motion on February 17, 2017 to vacate, set aside, or correct his conviction or sentence under 28 U.S.C. § 2255. (D.E. No. 1). Respondent filed its full answer on April 28, 2017. (D.E No. 6). Petitioner filed a reply on June 20, 2017. (D.E. No. 9). The matter is fully briefed and ready for disposition.

## II. STANDARD OF REVIEW

Section 2255 provides in relevant part that:

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). A district court must hold an evidentiary hearing on a § 2255 motion unless the "motion and the files and records of the case conclusively show" that the movant is not entitled to relief. 28 U.S.C. § 2255(b); *see also United States v. Booth*, 432 F.3d 542, 545–46 (3d Cir. 2005).

## III. ANALYSIS

Petitioner raises three grounds for relief: (i) his counsel was ineffective during the plea bargaining stage; (ii) his counsel was ineffective for failing to request a mental health evaluation to determine his competency; and (iii) the Court incorrectly sentenced him as a career offender. (D.E. No. 1-1 at 1–2 & 12). For the reasons explained in this section, the Court finds that Petitioner's claims do not warrant relief.

### A. Ineffective Assistance of Counsel

The United States Supreme Court has set forth a two-part test by which courts must evaluate claims of ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). First, Petitioner must show that "counsel's performance was deficient," which means that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Specifically, counsel's performance is deficient if his representation falls "below an objective standard of reasonableness." *Id.* at 688. In examining the question of deficiency, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance". *Id.* at 689. As such, "the petitioner bears the burden of showing that counsel's challenged action was unreasonable

3

under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

Next, Petitioner must show that the deficient performance prejudiced him. *Strickland*, 466 U.S. at 687. A defendant is prejudiced when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Where, as here, the petitioner entered into a guilty plea, he "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

With respect to the sequence of the two prongs, "[a] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. Instead, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed.'" *Id.*; *see also Rainey v. Varner*, 603 F.3d 189, 201 (3d. Cir. 2010).

Finally, courts deciding an ineffectiveness claim must consider the facts of the case at the time of counsel's conduct and must make every effort to escape what the *Strickland* court referred to as the "distorting effects of hindsight." *Id.* at 689.

### 1) <u>Ineffective Assistance—Sentencing Exposure</u>

Petitioner first claims that his counsel was ineffective for failing to adequately investigate the facts of Petitioner's offense and advise Petitioner of his sentencing exposure. (D.E. No. 1-1 at 1–10). Petitioner alleges that his counsel urged him to plead guilty and advised him that he would receive a five-year sentence for the offense. (*Id.* at 8). Petitioner also claims that his counsel "never went over the guidelines" with him. (*Id.* at 4). According to Petitioner, but for counsel's failure to inform him that he was facing more than five years of imprisonment, he would not have

pleaded guilty and accepted responsibility for an offense that triggered a mandatory minimum sentence. (*Id.* at 8). Petitioner further submits that, once he reviewed the PSR, he informed his counsel that he wanted to withdraw his guilty plea, to which counsel stated that he "was surprised by the PSR but taking the plea back would be stupid." (*Id.* at 5). In response, Respondent argues that Petitioner fails to demonstrate that: (i) his counsel's performance was deficient; and (ii) Petitioner was prejudiced as a result. (D.E. No. 6 at 11). Respondent further argues that the record belies Petitioner's argument that he was unaware of his sentence exposure. (*Id.* at 9–10).

A "defendant has the right to make a reasonably informed decision whether to accept a plea offer" and the "[k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992). Although it refrained from articulating a precise "standard defense counsel must meet when advising their clients about the desirability of a plea bargain and, concomitantly, about sentence exposure," *id.*, the Third Circuit made clear that "counsel is required "to know [the applicable rules and guidelines] and the relevant [legal] precedent," *United States v. Smack*, 347 F.3d 533, 538 (3d Cir. 2003). Nevertheless, "an erroneous sentencing prediction by counsel is not ineffective assistance of counsel where . . . an adequate plea hearing was conducted." *United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). In other words, "defense counsel's conjectures to his client about sentencing are irrelevant where the written plea agreement and in-court guilty plea colloquy clearly establish the defendant's maximum potential exposure and the sentencing court's discretion." *Id.*

Here, even assuming there was an erroneous sentencing prediction by counsel in this case, that error was corrected by the written plea agreement, the Rule 11 form, and the plea hearing. Because the Court finds that Petitioner has not established any prejudice as a result of counsel's

5

representation, the Court will not address whether counsel's performance was actually deficient.

The plea agreement specifically stated that the charge Petitioner plead guilty to "carries a statutory mandatory minimum prison sentence of five (5) years, a statutory maximum prison sentence of forty (40) years imprisonment." (D.E. No. 6-1, Attachment A ("Plea Agrmt") at 2). In addition, the plea agreement made clear that "[t]he sentence to be imposed upon [Petitioner] is within the sole discretion of the sentencing judge," who "may impose any reasonable sentence up to and including the statutory maximum term of imprisonment and the maximum statutory fine." *Id.*

Petitioner's signed Rule 11 Form provided in relevant part, that Petitioner's lawyer had informed him, and Petitioner understood, that he faced up to forty years imprisonment for the offenses charged, and that the sentence could not be determined until after a PSR was completed. (D.E. No. 6-1, Attachment B ("Rule 11 Form") at 3–4).

Even if Petitioner was still under the impression that he would only be sentenced to five years after signing the plea agreement and the Rule 11 Form, the guilty plea colloquy further eliminated any such confusion. As an initial matter, the Court confirmed that Petitioner understood what he signed:

> Q. All right. Can you take a look at the signature and confirm for me that that is your signature.
>
> A. Yes.
>
> Q. Before you signed that Mr. Henderson, did you go over that form with Mr. Brownstein?
>
> A. Yes.
>
> Q. And usually what happens is the attorney will read the question. The defendant answers the question and the attorney then writes in the response Is that what occurred in this case?
>
> A. Yes.
>
> Q. And that is okay, but the question I have is did you answer each and every question?

> A. Yes.

(Plea Hr'g Tr. at 26:17–27:55).

The Court also specifically reviewed Petitioner's sentence exposure associated with the charged offense:

> Q: . . . Can you turn to page 2 of the June 2 letter. And at the very first paragraph, you understand that the charges to which you are currently pleading guilty, it is a statutory mandatory minimum prison sentence of five years. And a statutory maximum prison sentence of forty years. Do you understand that, sir?
>
> A: Yes.

(Plea Hr'g Tr. at 19:17–24).

The Court further confirmed that Petitioner understood that his counsel could not tell him "precisely what [he was] going to receive in this case;" and that "no one really [knew the sentence] yet until that final presentence report [was] issued and until [the Court] actually [sentenced Petitioner]." (*Id.* at 23:6–8, 14–19). Moreover, the Court inquired as to whether Petitioner's counsel advised him of his approximate guidelines range, and contrary to what he now alleges, Petitioner confirmed that his counsel went over with him "the guidelines and how they operate." (*Id.* at 33:22–24). Finally, the Court engaged in an extensive colloquy with Petitioner about his level of satisfaction with his counsel, as well as his understanding of the parameters of the plea agreement he entered:

> Q. Before you signed that plea agreement, Mr. Henderson, did you go over the that [sic] plea agreement from the very first page to the very last page with your attorney?
>
> A. Yes.
>
> Q. Did you read it yourself?
>
> A. Yes.
>
> Q. Did you ask Mr. Brownstein any questions you may have with respect to the plea agreement, its terms and conditions?
>
> A. Yes.

7

> Q. And he answered those questions to your satisfaction?
>
> A. Yes.
>
> Q. As you sit here today, do you have any questions regarding the plea agreement?
>
> A. No.

(Plea Hr'g Tr. at 12:17–13:8).

Thus, the record supports that Petitioner understood, at least by the time the guilty plea hearing was held, that his maximum potential sentence exposure was forty years and that the Court had the discretion to impose a final sentence. His counsel's prior conjectures about sentencing, even assuming they were erroneous as Petitioner now alleges, are irrelevant. *See Shedrick*, 493 F.3d at 299. Ultimately, the Court sentenced Petitioner in a manner that was consistent with the plea agreement and the warnings it provided at the guilty plea hearing. Petitioner thus suffered no prejudice. Because Petitioner fails to establish the prejudice-prong of the *Strickland* test, Petitioner's § 2255 motion based on the claim that his counsel failed to advise him of his sentence exposure is denied.

### 2) *Ineffective Assistance—Failure to Request Mental Competence Evaluation*

Petitioner next submits that his counsel's failure to request a mental competence evaluation constituted ineffective assistance. (D.E. No. 1-1 at 10–12). According to Petitioner, he told his counsel that "he had some mental health issues" to the extent that "sometimes he does not know what's going on." (*Id.* at 10). Petitioner also alleges that he told his counsel that these mental health issues were resulting from his prior incarceration from 2002 to 2014 and from having "a harsh childhood watching his father use drugs, and the fact that his mother was an alcoholic." (*Id.*). Also, Petitioner asserts that his counsel told him that "he was not getting a mental health evaluation, and that he needed to plead guilty and not upset the judge." (*Id.*). Petitioner alleges that there was a reasonable probability that the outcome of the case would have been different had

an evaluation been conducted. (*Id.* at 11).

Counsel can be deemed ineffective if he "fail[s] to inquire into defendant's competency and fail[s] to request a competency hearing, despite indicia of incompetence that would provide reasonable counsel 'reason to doubt' the defendant's ability to understand the proceedings, communicate with counsel, and assist in his own defense." *Jermyn v. Horn*, 266 F.3d 257, 300 (3d Cir. 2000). A medical opinion regarding a defendant's competence or violent courtroom behavior qualify as factors for courts to consider when determining whether to hold a competency hearing. *See United States v. Jones*, 336 F.3d 245, 257-258 (3d Cir. 2003).

Here, Petitioner has not demonstrated how counsel's failure to request a competency hearing fell outside the range of reasonable professional assistance. *See id.* at 302, *see also Kimmelman*, 477 U.S. at 381.

First, Petitioner informed the Court that he was not under the influence of any drugs or alcohol at the time of the guilty plea hearing, and that he had never been treated for any mental illness or drug addiction. (Plea Hr'g Tr.at 3:10–15). Further, the Court had an opportunity to observe Petitioner at his guilty plea hearing and concluded that he was competent to understand the nature of the proceedings. (*Id.* at 30:4–9). Additionally, Petitioner, his counsel, and the Court addressed Petitioner's difficult upbringing and significant period of past incarceration as mitigating factors during the sentencing hearing. (Sent. Hr'g Tr. at 80:8–25, 81:1–14, 83:9–17, 100:21–25, 101:1–9, 103:24–25 & 104:1–3). Despite Petitioner's argument that "sometimes he does not know what's going on," he appeared to understand the gravity of the situation in advance of the sentencing hearing. The record reflects that notwithstanding Petitioner appearing to be too overwhelmed with emotion to address the Court, he provided a letter in advance of the hearing that raised some of his hardships, including a significant period of prior incarceration. (Sent. Hr'g

Tr. at 48:3–49:11 & 49:22–50:9). Consequently, Petitioner has not demonstrated that counsel was deficient by failing to seek a competency hearing or mental health evaluation. Neither has Petitioner provided any support to demonstrate prejudice: Petitioner merely reiterates the black letter law that "[t]here is a reasonable probability" that, had counsel sought a mental health evaluation and moved the court for competency hearing, the outcome of the case would have been different." (D.E. No. 1 at 11). Therefore, Petitioner is not entitled to relief on this claim.

### B. Erroneous Career Offender Classification

Finally, Petitioner submits that he "was wrongly sentenced as a career offender based on prior narcotics convictions under New Jersey State Statute." (D.E. No. 1-1 at 12–16). At the sentencing hearing, Petitioner was found to be a career offender based on prior convictions under the New Jersey state law. (Sent. Hr'g Tr. at 33:16–17 & 101:25). These state convictions included "convictions for possession of a controlled dangerous substance with intent to distribute within 1,000 feet of a school." (D.E. No. 1-1 at 13). Petitioner now alleges that the controlled substance offenses, as defined by the New Jersey State Statute, are "broader than the elements of a controlled substance offense under U.S.S.G. § 4B1.2 and cannot serve as a career offender predicate." (*Id.* at 12).

Respondents submit that Petitioner is procedurally barred from raising this claim, and that Petitioner's argument fails on the merits. This Court agrees that Petitioner has not established why the collateral attack waiver contained in his plea agreement is not applicable to the instant claim.

When a plea agreement includes a waiver relinquishing a defendant's rights to collaterally attack his sentence, such waiver is generally enforced where the court determines "(1) that the issues [the defendant] pursues on appeal fall within the scope of his appellate waiver and (2) that he knowingly and voluntarily agreed to the appellate waiver, unless (3) enforcing the waiver would

10

work a miscarriage of justice." *Mabry v. Shartel*, 632 F. A'ppx 707, 710 (3d Cir. 2015) (citations omitted).

Here, as discussed above, Petitioner knowingly entered into a plea agreement that encompassed a waiver of any collateral attack filed pursuant to 28 U.S.C. § 2255. By entering into the plea agreement, Petitioner acknowledged that he "voluntarily waive[d] the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to . . . a motion under 28 U.S.C. § 2255," unless the Court imposed a sentence above the Guidelines range. (Plea Agrmt. at 7; Plea Hr'g Tr. at 25:7–14). Because it is undisputed that the sentence imposed was below the Guidelines ranges, the Court finds that the issues Petitioner now presents fall well within the scope of the collateral attack waiver. (Plea Agrmt. at 7). Moreover, as explained below, the Court finds that Petitioner failed to establish how the career offender designation was erroneous.

Petitioner has not established how New Jersey's controlled substance offense statute "sweeps more broadly" than the Guidelines's definition of "controlled substance offense." The New Jersey statute at issue makes a crime of the third degree to "distribut[e], dispens[e], or possess[ ] with intent to distribute a controlled dangerous substance or controlled substance analog while on school property" or within 1,000 feet of school property. N.J. Stat. Ann. § 2C:35-7. On the other hand, for purposes of career offender classification, the Guidelines defines "controlled substance offense" as "an offense under federal or state law" that prohibits the distribution, dispensing, or possession with intent to distribute or dispense a controlled substance or a counterfeit substance. U.S.S.G. § 4B1.2(b). In addition, the Guidelines's definition of controlled substance offense also includes offenses based on manufacturing, importing, and exporting controlled substance or a counterfeit substance, as well as possession of such substance "with intent to manufacture, import, [and] export." *Id.* Because both the New Jersey statute under which

11

Petitioner was convicted and the Guidelines' definition cover offenses based on distribution, dispensing, and possession with intent to distribute a controlled substance, and the Guidelines covers additional offenses based "manufacturing, importing, and exporting" of the controlled substance, the New Jersey statute does not "sweep[] more broadly" than the Guideline. *See United States v. Lampley*, 723 F. A'ppx 152, 155 (3d Cir. 2018) (holding that section 2C:35-7 under New Jersey Statutory Annotated qualifies as a predicate drug offense that triggers career offender status). Petitioner was thus correctly designated as a career offender. Accordingly, the Court denies this claim.

## IV. CERTIFICATE OF APPEALABILITY

This Court must determine whether Petitioner is entitled to a certificate of appealability in this matter. *See* Third Circuit Local Appellate Rule 22.1. A certificate of appealability can be issued if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Based on the discussion in this Opinion, Petitioner has not made a substantial showing of the denial of a constitutional right, and this Court will not issue a certificate of appealability.

## V. CONCLUSION

For the reasons discussed above, Petitioner's § 2255 motion is denied. An appropriate Order follows.

*s/ Esther Salas*  
**Esther Salas, U.S.D.J.**